IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER PIERCE,

      Petitioner,

v.                                              CV 06-910 BB/CEG

JOSE ROMERO, Warden,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on: (i) Christopher Pierce's (Pierce) pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, (ii) Respondent's Answer, and (iii) the Record Proper from the state proceedings.  *See Docs. 1, 11, 17, 19.*[1]  Nearly twenty years ago, Pierce was convicted of first degree murder, three counts of criminal sexual penetration in the first degree (CSPM), and one count of criminal sexual conduct in the third degree (CSCM).  He was sentenced to life in prison, plus eighteen years consecutive to the life imprisonment.  *See Ex. I.* In this proceeding, Pierce brings nineteen claims, many of which are procedurally defaulted.[2]

---

[1]  All citations to "Exhibits" are to those attached to Respondent's Answer, which was docketed as Document 11.  Citations to the Record Proper are to the bates-stamped numbers, unless otherwise noted.

[2]  In addition, Pierce did not, pursuant to the one-year limitation in 28 U.S.C. § 2244(d), timely file his federal habeas petition.  On April 24, 1996, AEDPA took effect.  Pierce filed his state habeas petition on April 23, 1997, one day before the expiration of the AEDPA grace period.  The federal prison mailbox rule does not apply for purposes of determining when the tolling period for a properly filed state petition begins.  *See Adams v. LeMaster,* 223 F.3d 1177, 1181 (10th Cir. 2000).  Pierce, then, had only one day after the New Mexico Supreme Court denied his certiorari petition to file his federal § 2254 habeas petition.  *See Garcia v. Shanks,* 351 F.3d 468, 471 (10th Cir. 2003).  The New Supreme Court denied Pierce's certiorari petition on August 29, 2006.  Pierce delivered his federal petition to prison authorities on September 8, 2006, eight days too late.  *See Doc. 1.*  Accordingly, Pierce's petition is time barred.

    Respondent, in his Answer, did not argue that Pierce's petition was time barred.  *See Doc. 11.*  I do not consider this failure to be a deliberate waiver.  "[D]istrict courts are permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition . . . if a judge does detect a clear computation error, no Rule, statute, or constitutional provision commands the judge to suppress that knowledge."  *Day v. McDonough,*

For the reasons below, I recommend that the § 2254 petition be dismissed with prejudice.[3]

## Background

In 1987, Pierce began living with Dawn Simandl (Simandl) and her two children, a son, age four, and a daughter, age two. The four were living in a camper, which was parked in a friend's backyard. *See Transcript* at 315-324. While living with Pierce, Simandl's four-year-old son began experiencing eating and elimination disorders. *Id.* at 298-305. On October 14, 1987, Pierce took Simandl to beauty school around eight in the morning, and then returned to the camper to care for the children. *See 7-9-99 Transcript* at 32. In the early afternoon, Pierce entered the camper and found Simandl's son in the middle of an elimination disorder episode. *Id.* at 33. He began beating the child. *Id.* at 34. Thirty to forty-five minutes later, Pierce phoned Simandl and informed her that her son was unconscious. *Id.* at 36. Pierce then went to pick up Simandl at beauty school, and, four hours later, they took the child to the emergency room. *Id.*; *Pierce v. State*, 792 P.2d 408, 410 (1990). The child died several hours later. *Id.*

Pierce was charged with first degree murder, three counts of CSPM, two counts of CSCM, sixteen counts of child abuse resulting in death or great bodily harm, and three counts of child abuse not resulting in death or great bodily harm. *Record Proper ("RP")* at 1-6. Each count of child abuse was based on a separately identifiable injury to the child. *Id.* Prior to trial, Pierce's attorney, Gary Mitchell, successfully negotiated with the State to drop the death penalty.

---

547 U.S. 198, 209 (2006). However, anticipating equitable tolling arguments from Pierce, and considering the seven-year delay in the state post-conviction proceedings, I have decided that "the interests of justice would be better served" by addressing Pierce's claims on the merits. *Id.* at 210. In any event, pursuant to 28 U.S.C. § 636(b)(1), Pierce may address my time barred finding in his objections.

[3] All of the issues can be resolved on the record and, therefore, an evidentiary hearing is unnecessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); *Rule 8(a), Rules Governing Section 2254 Cases In The United States District Courts.*

In exchange, Pierce waived his right to a jury trial.  *Id*. at 398.

At trial, medical evidence showed that the child had been injured over approximately 90% of his body, that he sustained over 80 separate blows, and that most of the injuries that occurred within 24-48 hours of death were life-threatening in nature.  *See Transcript* at 14-92. Medical experts testified that bite marks were consistent with having been caused by Pierce's teeth and that the child's anus had been penetrated three times.  *Id*. at 50-56, 93, 95-104.  An expert in blood pattern analysis also testified that the beating had taken place in two different locations in the camper.  *Id*. at 137-153.  In addition, one of Pierce's fellow inmates, James Galvan (Galvan), testified.  Among other things, Galvan stated that Pierce admitted to beating the child to death and did so because the child was "in mine and Dawn's way."  *Id*. at 345.

The trial judge found Pierce guilty of first degree murder, three counts of CSPM, one count of CSCM, fourteen counts of child abuse resulting in great bodily harm or death, and two counts of child abuse not resulting in great bodily harm or death.  *See Ex. A*.  On direct appeal to the New Mexico Supreme Court, Pierce raised two issues: (i) whether the evidence presented at trial was sufficient to support defendant's convictions of CSPM and CSCM, and (ii) whether defendant improperly was convicted of first degree murder and duplicative counts of child abuse.  *See Pierce*, 792 P.2d at 410.  For his CSPM and CSCM sufficiency claim, Pierce argued that there was no proof that he acted with the requisite specific sexual intent.  *Id*. at 411.  In rejecting his argument, the court held that the CSPM and CSCM statutes did not adopt a requirement for specific sexual intent.  *Id*. at 414.  As for his double jeopardy claim, the court held that: (i) it was error to impose multiple sentences for child abuse resulting in death or great bodily harm, and (ii) it was error to also impose sentences for two counts of child abuse not resulting in death or great bodily harm where the state did not charge and prove that such acts of

3

child abuse occurred at a time period different from the episode resulting in the child's death.  *Id.* at 419.  As such, on remand, all of Pierce's child abuse convictions were vacated.  *See Ex. I.*

Pierce filed his state habeas petition on April 23, 1997.  On January 7, 1998, Marc Robert was appointed to represent Pierce in the post-conviction proceedings.  *See Ex. L.*  From July 1999 to February 2000, the court held nine evidentiary hearings, where it heard testimony from Pierce, Mr. Mitchell, the trial judge, a legal expert, several prison inmates, several investigators, several assistant district attorneys, a corrections officer, and Pierce's mother.  *See Docs. 17, 19.*  Most notably, Pierce testified that on October 14, 1987, he "flipped out," hit Ricky hard for thirty seconds, but did nothing sexual.  *See 7-9-99 Transcript* at 34-36, 66.  On July 4, 2006, over six years after hearing closing arguments, the district court denied Pierce's habeas petition in a lengthy written opinion.  *See Ex. N.*  As for the delay, the judge apologized to all parties involved and explained that he had lost the opinion during a move to a new courthouse.  *Id.* at 2-5.

Pierce, through counsel, filed his petition for writ of certiorari with the Supreme Court of New Mexico on August 7, 2006.  *See Ex. P.*  The petition for certiorari was denied, in a form order, on August 29, 2006.  *See Ex. Q.*  Pierce's § 2254 petition was filed in this Court on September 26, 2006.  *See Doc. 1.*

Standard of Review

When a state court "adjudicates" the claim at issue on the merits, rather than disposing of a claim on a procedural ground, a federal court cannot grant a writ of habeas corpus unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1)-(2); *see e.g.*, *Parker v. Scott*, 394 F.3d 1302, 1308-09 (10th Cir. 2005); *Saiz v. Ortiz*, 392 F.3d 1166, 1176 (10th Cir. 2004), *cert. denied,* 125 S. Ct. 2976 (2005).[4]

The phrase "clearly established federal law, as determined by the Supreme Court of the United States" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta" of the Supreme Court that set forth "the governing legal principle or principles . . . at the time the state court renders its decision." *Yarborough v. Alvarado,* 541 U.S. 652, 660-661 (2004) (internal quotations and citations omitted). "A state-court decision is contrary to [the Supreme] Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton,* 544 U.S. 133, 141 (2005) (internal citations omitted).

A state decision is not deemed  "contrary to" just because it fails to cite Supreme Court opinions, is unaware of Supreme Court precedent, or fails to address a claim or provide any reasoning for its decision.  Rather, the focus is whether the reasoning or the result of the state court decision is either contrary to established precedent as defined above, or an unreasonable application thereof.  *E.g., Mitchell v. Esparza,* 540 U.S. 12, 16 (2003); *Early v. Packer*, 537 U.S. 3,8 (2002); *Saiz,* 392 F.3d at 1176; *Gipson v. Jordan,* 376 F.3d 1193, 1196-97 (10th Cir. 2004).

"A state-court decision involves an unreasonable application of this Court's clearly

---

[4] The Court concludes that all of Petitioner's claims have been "adjudicated" by the state court.  *See Exs.  I, K, N, P*.  We have consistently held that AEDPA applies to petitions filed after AEDPA's effective date, regardless of when the state proceedings occurred. *See Trice*, 196 F.3d at 1158; *Moore v. Gibson*, 195 F.3d 1152, 1163 (10th Cir. 1999). We thus apply the AEDPA standards of review.

established precedents if the state court applies this Court's precedents to the facts in an

objectively unreasonable manner." *Brown,* 544 U.S. at 141.  However, "it is not enough that a

federal habeas court, in its independent review of the legal question, is left with a firm

conviction that the state court" applied "clearly established federal law erroneously or

incorrectly." *Lockyer v. Andrade,* 538 U.S. 63, 75-76 (2003) (internal quotations and citations

omitted).  "Rather, that application must be objectively unreasonable." *Id.* at 76.[5]

Under § 2254(d)(2), a state decision rests on an "unreasonable determination of the facts"

where Petitioner shows by "clear and convincing evidence" that the factual finding is erroneous.

Otherwise, the factual findings are presumed correct. *E.g., Miller-El v. Dretke,* 545 U.S. 231,

240 (2005); 28 U.S.C. § 2254(e)(2).

If application of the above standards does not foreclose further review and discussion by

the federal court, habeas relief nonetheless cannot issue absent a finding of a constitutional

violation sufficient to warrant such relief.[6]

### Sufficiency of the Evidence

In his second and eighth issues, Pierce argues that the only evidence linking him to

---

[5]        The term 'unreasonable' is 'a common term in the legal world and, accordingly, federal judges are familiar with its meaning.' . . .  At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

*Yarborough,* 541 U.S. at 664.

[6]  *See, e.g., Turrentine v. Mullin,* 390 F.3d 1181, 1189-90 (10th Cir. 2004), *cert. denied,* 125 S. Ct. 2544 (2005); *Brown v. Uphoff,* 381 F.3d 1219, 1225 (10th Cir. 2004), *cert. denied sub nom,* 125 S. Ct. 940 (2005); *Aleman v. Sternes,* 320 F.3d 687, 690 (7th Cir.), *cert. denied,* 539 U.S. 960 (2003); *Herrera v. Lemaster,* 301 F.3d 1192, 1199 (10th Cir. 2002), *cert. denied,* 537 U.S. 1197 (2003).

CSPM, CSCM, and first degree murder was from a jail house snitch who perjured himself at trial.  Under *Jackson*, evidence of guilt is sufficient if, when viewed in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The New Mexico Supreme Court opinion addressed the sufficiency of the first degree murder conviction, and the state habeas opinion addressed the sufficiency of the CSPM and CSCM convictions.  Under 28 U.S.C. § 2254(d)(1), the issue before me is whether the state court "reasonably decided that a 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Torres v. Lytle*, 461 F.3d 1303, 1313 (10th Cir. 2006) (quoting *Jackson*, 443 U.S. at 319).  The Tenth Circuit has described this standard of review as "deference squared." *Id*.[7]  The issue is not whether this Court concludes in its independent judgment that the relevant state-court decision applied *Jackson* erroneously or incorrectly.  *See Williams v. Taylor*, 529 U.S. 362, 411 (2000)  "Rather, that application must also be unreasonable."  *Id*.

As for the first degree murder claim, the New Mexico Supreme Court found, in relevant part, that:

> Our review of the record, including the evidence previously summarized herein, indicates that defendant's conviction of first-degree murder is amply supported by the evidence.  Proof of the multitude of injuries inflicted upon the child, covering more than 90% of his body, and evidence depicting the nature and severity of the injuries, together with the jail mate's testimony that defendant admitted beating and kicking the child because he was 'in the

---

[7] Alternatively, under 28 U.S.C. § 2254(d)(2), the issue would be whether the decision of the court of appeals was based on an unreasonable determination of the facts in light of the evidence presented.  In the Tenth Circuit, "there is some debate" as to whether a challenge to the sufficiency of the evidence presents a question of law, subject to review under section 2254(d)(1), or a question of fact, subject to review under section 2254(d)(2). *Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003).  However, the court has noted that other circuits treat the question as a legal one.  *Id*. at 1152.  The court has also treated the question as a legal one when, as here, the habeas applicant did not specifically contend that the state court's factual findings were erroneous. *See id*. at 1151.

> way,' provided substantial evidence upon which the court properly
> could determine that defendant committed each element of the
> charge of first degree murder.[8]

*Pierce*, 798 P.2d at 416.  Having reviewed the record from the trial, I conclude that the court did

not unreasonably apply the *Jackson* standard.  Most notably, testimony at trial elicited from Drs.

Clark, Campbell, and Demarest, as well as James Galvan, supports my conclusion.  *See*

*Transcript* at 14-92, 95-104, 163-177, 344-46.  Testimony from the expert in blood stain

analysis, which showed that the beating took place in two locations in the camper, also supports

my conclusion.  *Id.* at 137-153.  Even if I were to review this issue under a de novo standard, I

would reach the same result under *Jackson*.

As for the CSPM and CSCM claim, at the outset, I note that this claim was argued for the

first time in Pierce's state habeas petition, but was abandoned in his petition for certiorari.

Therefore, his claim is exhausted but procedurally defaulted.[9]  Nevertheless, I will address it

below because I find it to be without merit.

---

[8]  N.M. Stat. Ann. § 30-2-1(A)(1) (1978) provides:
>   A. Murder in the first degree is the killing of one human being by another
>   without lawful justification or excuse, by any of the means with which death
>   may be caused:
>>   (1) by any kind of willful, deliberate and premeditated killing.

[9]  Before filing a habeas corpus petition in federal court, an applicant is generally required to exhaust all remedies available in the state-court system.  *See* 28 U.S.C. § 2254(b)(1)(A).  An applicant "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This includes discretionary review by the state supreme court.  *Id.*  Here, Pierce first raised the CSPM and CSCM sufficiency claims in his state habeas petition, but abandoned this issue in his petition for certiorari.  As such, this claim has not been exhausted. *See Tisthammer v. Williams*, 49 Fed.Appx 757, 764 (10th Cir. September 6, 2002).  Pierce, however, would be barred from relief if he were to return to state court to exhaust this claim.  In this circumstance, his claim is exhausted but procedurally defaulted for purposes of federal habeas relief.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n. 1(1991) (holding that if the court to which a petitioner must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review); *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000).

In the state habeas proceedings, the court denied Pierce's CSPM and CSCM sufficiency claim, noting that:

> Even without considering the evidence and testimony of the jail inmate, the Record shows overwhelming evidence from a pathologist that the 4-year old victim had 3 separate penetration's of his anus–all almost certainly occurring why [*sic*] the child was in Petitioner's sole custody and responsibility, and with no reasonable (or even plausible) theory that any other person(s) could have (or did) inflict any of these CSP's and CSCM's upon the victim.

*Ex. N* at 10.  Having reviewed the record from the trial, I conclude that the state court did not unreasonably apply the *Jackson* standard.  Dr. Clark's testimony, as well as Dr. Demarest's testimony, provided sufficient evidence to support the CSPM and CSCM convictions under N.M. Stat. Ann. §§ 30-9-11(A) and 30-9-13(A).[10]  *See Transcript* at 50-56, 93, 172-73, 177-78. Moreover, Ms. Simandl's testimony put the victim in Pierce's custody during the time the injuries occurred.  *Id.* at 202-223.  Again, even if I were to review Pierce's claim under a de novo standard, I would reach the same result under *Jackson*.

---

[10]  N.M. Stat. Ann. § 30-9-11(A) (1978) provides:

Criminal sexual penetration is the unlawful and intentional causing of a person, other than one's spouse, to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse, or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is an emission.
A. Criminal sexual penetration in the first degree consists of all criminal sexual penetration perpetrated:

(1) on a child under thirteen years of age; or
(2) by the use of force or coercion which results in great bodily harm or great mental anguish to the victim.

N.M. Stat. Ann. § 30-9-13(A) (1978) provides:

[U]nlawfully and intentionally touching or applying force to the intimate parts of a minor other than one's spouse or unlawfully and intentionally causing a minor, other than one's spouse to touch one's intimate parts. For purposes of this section, 'intimate parts' means the primary genital area, groin, buttock, anus or breast.
A. Criminal sexual contact of a minor in the third degree consists of all criminal sexual contact of a minor perpetrated:

(1) on a child under thirteen years of age.

Ineffective Assistance of Counsel Claims

To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test.[11]  First, he must show that counsel's performance fell below an objective standard of reasonableness.  *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Judicial scrutiny of counsel's performance is highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy.  *Id.* at 689.  To be constitutionally ineffective, counsel's conduct "must have been completely unreasonable, not merely wrong."  *Moore v. Gibson*, 195 F.3d 1152, 1178 (10th Cir. 1999)*, cert. denied,* 120 S. Ct. 2206 (2000); *see also Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).  Second, the petitioner must show he has been prejudiced; that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 694.  Conclusory assertions are insufficient to establish ineffective assistance.  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).  Because this test is two pronged, if either prong is not met, it is unnecessary to discuss the other.  *E.g., Hill v. Lockhart*, 474 U.S. 52, 60 (1985).   The test set forth in *Strickland* also applies to claims of ineffective assistance of appellate counsel.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).

a.  Refusal to Allow Pierce to Testify

In his third issue, Pierce alleges that he was not allowed by his attorney to take the stand. There is no dispute that a defendant has a constitutional right to take the witness stand in his or her own defense.  *See Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987).  This decision lies with the defendant, and not counsel.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Counsel lacks

---

[11] Ineffective assistance of counsel is a mixed question of law and fact under the AEDPA standards.  *See Boltz v. Mullin,* 415 F.3d 1215, 1221 (10th Cir. 2005).

10

authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal strategy.  *See United States v. Janoe*, 720 F.2d 1156, 1161 (10th Cir. 1983).  Defense counsel bears the primary responsibility for advising the defendant of the right to testify or not to testify.  *See Brown v. Artuz*, 124 F.3d 73, 79 (2nd Cir. 1997).  "[A]ny claim by the defendant that defense counsel has not discharged this responsibility–either by failing to inform the defendant of his right to testify or by overriding the defendant's desire to testify–must satisfy the two-prong test established in *Strickland*. . . ."  *Id.*

In the state habeas proceedings, the court found that "there is no showing that the trial Judge discouraged or prevented Petitioner from testifying at trial, nor even that his own attorney 'prevented' him from testifying.  Nothing in the record of trial shows that Petitioner himself, or through his counsel asked or told the Judge that he wanted to testify at trial, or that he was being inhibited or prevented from testifying at trial."  *Ex. N* at 19-20.  The presumption of correctness accorded to factual findings in state court applies, and such findings will not be set aside unless they are unreasonable in light of the evidence presented.

Pierce offers no evidence to refute the state court's finding that his attorney did not prevent him from testifying.  During the evidentiary hearings, Mr. Mitchell testified that he did not recall if Pierce specifically asked to testify.  However, Mr. Mitchell did state that:

> Q: If he had insisted on testifying, would you have called him to
> the stand?
> A: I would have – I believe that every defendant has a right to
> testify.  If he insists on it, he's going to testify.  I may write him a
> letter to tell him it's not in his best interests, I may beg and plead
> with him, but I've never been confronted with that issue of
> somebody wanting to testifying and my deliberately telling the
> judge he's not going to testify or manipulating that situation.  I can
> be persuasive with a client, but there is a major difference.  If the
> client insists on it, he's going to testify.

11

*7-8-99 Transcript* at 104-5.  Having reviewed the entire record, I cannot conclude that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented and thus find that Pierce has failed to demonstrate that his attorney's performance was deficient.

Assuming that Pierce could satisfy the first Strickland prong, I would nevertheless conclude that the state court did not err in rejecting Pierce's claim at the second *Strickland* prong because he has failed to establish prejudice.  Had Pierce testified at trial, he would have told the judge that on October 14, 1987, he "flipped out," hit Ricky hard for thirty seconds, but did nothing sexual.  *See 7-9-99 Transcript* at 34-36, 66.  During trial, Pierce's defense was effectively set out through two psychologists called by Mr. Mitchell and on cross-examination of the State's witnesses.  *See, e.g., Transcript* at 431-534.  Had Pierce testified at trial, much of his testimony would have been impeached because of lies he told to police during investigation.  *See 7-9-99 Transcript* at 38-39.  Considering that much of Pierce's testimony would have been cumulative, and balancing the benefit of his denial against damage on cross-examination, Pierce cannot show that the result of trial would have been different had he testified.

b.  Failure to Refute Perjured Testimony

In his seventh issue, Pierce alleges that "more than one state witness at trial perjured themselves and [my] trial attorney did little or nothing to combat this."  *Doc. 1* at 10-D. Although Pierce argued this issue in his state habeas petition, it was abandoned in the petition for writ of certiorari, and is therefore exhausted but procedurally defaulted for purposes of federal habeas review.  *See Thomas*, 218 F.3d at 1221; *fn. 9, supra*.  Notwithstanding this default, the claim should be denied as without merit.

In his petition, Pierce does not identify what witnesses he believes committed perjury.

12

At an evidentiary hearing, however, Pierce testified that Galvan, Deanna Dennis, and Simandl committed perjury.  *See 7-99-1999 Transcript* at 20-21.  Deanna Dennis did not testify at the trial.  Regarding Simandl,  Pierce testified at an evidentiary hearing as follows:

> Q: Anybody else?
> A: Yeah, Dawn.  She lied a little bit.
> Q: What did she say that was a lie?
> A: I am not sure, but her involvement is a little bit more than what people believe.
> Q: How do you know?
> A: I don't know.

*Id.*  Pierce provides no evidence, and I have found none, that Simandl or Deanna Dennis committed perjury.  His allegation is, thus, conclusory and insufficient to establish ineffective assistance.  *See Fisher*, 38 F.3d at 1147.

As for Galvan's testimony, after a complete review of the record, I find nothing which indicates that Mr. Mitchell's cross-examination of Galvan fell below an objective standard of reasonableness.  Again, Pierce has not offered any evidence that conclusively demonstrates that Galvan committed perjury.  Even assuming that Galvan put on perjured testimony, I would not find that Pierce was prejudiced by Mr. Mitchell's performance.  As the trial judge put it, "I thought [Mr. Mitchell] impeached Mr. Galvan . . . . I knew in advance [Galvan] was a con man. . . . I already assumed that [Galvan was a liar and a snitch] at the time I was listening to his testimony." *9-2-99 Transcript* at 11, 14, 37.  Accordingly, I recommend that this claim be denied.

c.  Failure to Investigate / Failure to Call Witnesses

Next, Pierce claims that his attorney failed to call witnesses he requested and failed to adequately research and investigate witnesses.  This claim was argued in Pierce's state habeas petition, but was abandoned in his petition for writ of certiorari.  Therefore, it is exhausted but

procedurally defaulted for purposes of federal habeas review. *See Thomas*, 218 F.3d at 1221; *fn. 9, supra*. Aside from this default, I note that Pierce is primarily re-arguing his claim regarding perjured testimony. I will not revisit that issue. To the extent Pierce is complaining of other failings in counsel's investigation or preparation, his allegations are conclusory and thus provide no basis to conclude that the state-court decision was an unreasonable application of *Strickland*. *See Fisher*, 38 F.3d at 1147 ("Although we must liberally construe Defendant's pro se petition, [citation omitted] we are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments.").

Similarly, Pierce also claims that Mr. Mitchell "would not hire expert witnesses to counter the states so called 'expert' witnesses." *Doc. 1* at 10-M. Despite Pierce's failure to properly exhaust this claim in state court, this court may deny relief on the merits.[12] *See* 28 U.S.C. § 2254(b)(2). Even assuming that Mr. Mitchell's actions could not be deemed reasonable trial strategy, Pierce cannot establish that he has been prejudiced. In both this Court and the state court, Pierce failed to identify an expert capable of testifying favorably on his behalf that would alter the outcome.[13] This failure is fatal to his habeas claim. *See Earhart v. Johnson*, 132 F.3d

---

[12] This issue was not raised in Pierce's state habeas petition or the supplement to the state habeas petition. *See Exs. J, M*.

[13] Indeed, in a state court evidentiary hearing, Dr. McFeeley testified that:

> So I think the nature of the injury wouldn't have been any [*sic*] question and I, in my own opinion, don't think there would have been a difference of opinion as to either the severity of the injuries or the cause of death. I think that would be pretty straightforward. And a number of the injuries were also very obvious. None of that was subtle. . . . And I would expect that most pathologists with training and with experience would be within that same range for those issues as far as timing and based on objective findings such as the iron stain.

*9-2-99 Transcript* at 71, 109. In addition, while Pierce's legal expert did testify in the state evidentiary hearing that she would have utilized a pathologist and a child psychologist, she also stated: (i) she would have to consult with a child psychologist and pathologist to see whether her theory "would hold water," (ii) she had not reviewed the pathology report, and, generally, (iii) she could not conclusively find that employing experts would have changed the outcome of Pierce's case. *See 7-9-99 Transcript* at 129, 144, 164.

1062, 1067-1068 (5th Cir. 1998) ("Earhart's failure to identify an expert whose testimony would have altered the outcome of his trial is fatal to his habeas claim."); *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990) (when an ineffective assistance claim centers on a failure to elicit testimony from witnesses, the petitioner must demonstrate, with some precision, the content of the testimony they would have given at trial"); *Evans v. Cockrell*, 285 F.3d 370, 377-378 (5th Cir. 2002) (petitioner presented no evidence of the results of scientific tests yielded and thus his unsupported claims failed to demonstrate reasonable doubt concerning his guilt or that his counsel deprived him of a fair trial).  The lack of a specific, affirmative showing of any exculpatory evidence leaves Pierce's claim short of the prejudice required by *Strickland*. *See Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994) (holding no prejudice to petitioner who failed to make specific, affirmative showing that absent witness's testimony would have affected outcome of trial).  As such, I recommend that this claim be denied.

d.  Failure to Communicate

Pierce next contends that his attorney failed to communicate with him, did not provide him paperwork, and became "enraged" when he sought advice from another attorney.  *Doc. 1* at 10-O.  First, although Pierce argued this issue in his state habeas petition, it was abandoned in his petition for writ of certiorari and is therefore procedurally defaulted.  *See Thomas*, 218 F.3d at 1221; *fn. 9, supra*.  Second, even when addressing the claim on the merits, Pierce's own testimony refutes most of his failure to communicate claim.  *See 7-9-99 Transcript* at 21-22.  Third, assuming that Pierce's allegations are true and that his attorney's actions could not be deemed reasonable trial strategy, Pierce has not shown how these actions negatively affected his trial.  Because Pierce has not established a reasonable probability that the result of the proceeding would have been different but for his attorney's deficient performance, the state

court's rejection of this ineffectiveness claim did not violate clearly established federal law.

e.  Failure to Argue Issues on Appeal

In his ninth issue, Pierce complains that his appellate counsel failed to raise all the issues he asked her to raise on direct appeal.  At the outset, I note that this claim is exhausted but procedurally defaulted because, although Pierce raised this claim in his state habeas petition, he did not do so in his petition for certiorari.  *See Thomas*, 218 F.3d at 1221; *fn. 9, supra.* Notwithstanding this failure, I find no merit to this claim.

The relevant inquiries under *Strickland* are whether appellate counsel was objectively unreasonable in failing to raise the issues and, if so, whether there is a reasonable probability that but for this unreasonable failure, Pierce would have prevailed on his appeal.  *See Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001).  In making these inquiries, the reviewing court must consider the merits of the omitted issues.  *Id.*  Although a claim of appellate ineffectiveness may be premised on the failure to raise an issue, it is difficult to establish deficient performance because counsel need not raise every nonfrivolous issue, but rather may select from among them to maximize the likelihood of success on appeal.  *See Smith*, 528 U.S. at 288.

I have discussed herein the merits of the issues that Pierce faults appellate counsel for not raising on direct appeal.  Having considered these issues, and finding them to be without merit, I cannot conclude that the state habeas court's decision was an unreasonable application of *Strickland*.  *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) ("[O]f course, if the issue is meritless, its omission will not constitute deficient performance.").

### Speedy Trial

In his fifth issue, Pierce asserts that his right to a speedy trial was violated because eleven months elapsed between his arrest and trial.  This claim was argued in Pierce's state habeas

petition, but not in his petition for writ of certiorari.  It is, then, exhausted but procedurally defaulted for purposes of federal habeas review.  *See Thomas*, 218 F.3d at 1221; *fn. 9, supra*. Aside from the procedural default, I conclude that the state court decision is not contrary to or unreasonable under the applicable standard of review.

In the state habeas proceedings, the court found that a motion to dismiss for alleged denial of a right to speedy trial would have be denied as a matter of law "without even considering the four <u>Barker v. Wingo</u> factors" because the trail commenced eleven and half months after the indictment.  *Ex. N* at 14-15.  I agree.  The length of delay factor triggers whether the court analyzes the other factors.[14]  *See Barker*, 407 U.S. at 530.  While there is no bright line test, courts have generally held that depending on the nature of the charges, a length of delay of one year is presumptively prejudicial.  *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).[15]  Considering the complex issues presented in this case, an eleven month delay is not presumptively prejudicial.  However, even if I were to consider the *Barker* factors, on balance, all of them weigh in favor of finding no speedy trial violation.

Prosecutorial Misconduct

In his sixth issue, Pierce argues that the prosecution failed to disclose the results of the "DNA, blood and tissue samples they took from me."  *Doc. 1* at 10-C.  This claim was first

---

[14]  The Supreme Court has adopted a balancing test for determining if the right to a speedy trial has been violated.  *See Barker*, 407 at 530.  Under *Barker*, the defendant's conduct is weighed against the prosecution's conduct.  *Id.*  The four factors to be considered when applying the balancing test are: (i) length of delay, (ii) reason for the delay, (iii) whether the defendant asserts his right to a speedy trial or acquiesces in the delay, and (iv) prejudice to the defendant.  *Id.*  None of these factors, standing alone, is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  *Id.* at 533.

[15]  The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first.  *See United States v. Marion*, 404 U.S. 307, 320-321 (1971).

argued in Pierce's state habeas petition, but not in his petition for writ of certiorari.  Thus, it is exhausted but procedural defaulted.  *See Thomas*, 218 F.3d at 1221; *fn. 9, supra*.  Nonetheless, because it can be easily disposed of on the merits, I will address it.

In the state habeas proceeding, the court denied this claim concluding that "evidence at this hearing did not show that the State failed to provide blood tests results and/or DNA testing results to Defense Counsel."  *Ex. N* at 15.  After a thorough independent review of the record, I cannot find that the state court's conclusion was an unreasonable determination of the facts in light of the evidence presented.  Pierce testified at his habeas evidentiary hearing that "I don't think there was [] DNA tests done at all."  *7-9-99 Transcript* at 14-15; *see also 7-8-99 Transcript* at 68-69.  In fact, according to Pierce, the only evidence the prosecution failed to disclose was the results of a blood test taken on the night of the murder, which would have revealed a high level of methamphetamine toxicity.  *Id*. at 14-15.  Testimony from Mr. Mitchell and the lead investigator do not corroborate Pierce's failure to disclose allegation.  *See 7-8-99 Transcript* at 68-69; *9-1-99 Transcript* at 84-85, 97.

Even if the prosecution did withhold the results of the toxicity levels in Pierce's blood, such evidence is not material.[16]  The prosecution in a criminal matter has a constitutional obligation to disclose exculpatory evidence to the defendant. *See Brady v. Maryland,* 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 153-54 (1972).  However, the evidence in

---

[16]  When a petitioner asserts a claim of prosecutorial misconduct in a habeas petition, the claim is reviewed only for a violation of due process.  *See Hamilton v. Mullin*, 436 F.3d 1181, 1187 (10th Cir. 2006). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).  In order to be entitled to relief, a petitioner must establish that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id*. at 643.  This Court may only make such a determination after "tak[ing] notice of all the surrounding circumstances, including the strength of the state's case."  *Coleman v. Brown*, 802 F.2d 1227, 1237 (10th Cir. 1986).

question must be material.  *See Giglio*, 405 U.S. at 154.  Exculpatory evidence is considered

material "if there is a reasonable probability that, had the evidence been disclosed to the defense,

the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280

(1999).  Here, it was common knowledge that Pierce was using methamphetamine at the time of

the murder.  As Mr. Mitchell stated in his opening argument: "I don't think there is any question

or should be a question about the fact that he was utilizing methamphetamine and marijuana and

to a great extent." *Transcript* at 429.  Accordingly, this claim should be denied.

Double Jeopardy

In his first issue, Pierce argues that "the state charged me with counts that were double

jeopardy."[17]  *Doc. 1* at 6.  Pierce successfully raised this same claim on direct appeal to the New

Mexico Supreme Court.  In relevant part, the New Mexico Supreme Court opinion states:

> Division of the act of child abuse into multiple offenses based
> solely upon proof of multiple injuries is contrary to legislative
> intent in enacting Section 30-6-1(C), and violated double jeopardy
> limitations.  Moreover, the record indicates that the offense of
> child abuse resulting in death or great bodily harm merged into the
> conviction for first degree murder. . . . Based upon the record
> before us, it was error to impose multiple sentences for child abuse
> resulting in death or great bodily harm.

*Pierce*, 792 P.2d at 417-19 (citations omitted).  The New Mexico Supreme Court ultimately

remanded the case to the trial court to vacate each of the convictions and sentences of child

abuse.  *Id*. at 419; *see also Ex. I*.  Because Pierce has already been afforded all the relief that his

is entitled to under this claim, I find no basis for habeas relief and recommend that it be denied.

---

[17]   More specifically, Pierce argues that the "the state charged me with 1st degree murder, felony murder, and child abuse resulting in great bodily harm or death, when child abuse resulting in great bodily harm or death was the norm . . . ."  *Doc. 1* at 6.

Tampered Evidence

In his twelfth issue, Pierce contends that photographs of the victim were tampered with and used to evoke high emotion to the state witnesses and the trial judge.  While Pierce did assert this issue in his state habeas petition, it was not argued in his petition for writ of certiorari and is procedurally defaulted.  *See Thomas*, 218 F.3d at 1221;  *fn. 9, supra*.  Notwithstanding this default, this claim is without merit.  Pierce does not offer any evidence to support his claim that the photographs were tampered with.  Such a bald assertion cannot warrant habeas relief.[18]  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) (holding that even pro se plaintiffs must allege sufficient facts on which a recognized legal claim can be based, and that conclusory allegations will not suffice).

Grand Jury Appearance

In his fourth issue, Pierce argues that he was not allowed to appear at the grand jury proceedings, despite being told he would be transported to the proceedings.  As an initial matter, I note that this claim was argued in Pierce's state habeas petition, but not in his petition for writ of certiorari.  Therefore, it is procedurally defaulted.  *See Thomas*, 218 F.3d at 1221; *fn. 9, supra*.  However, even when considering this claim on the merits, I find no merit in Pierce's claim.

Courts have not recognized a federal constitutional right to indictment by a grand jury in a state criminal prosecution. *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *United States v. Jordan*, 291 F.3d 1091, 1094 n. 2 (9th Cir. 2002).  Claims based on alleged defects in grand jury proceedings are therefore not reviewable in a petition for habeas corpus relief unless

---

[18]   In making this recommendation, I also note that after considering the probative value of the photographs, I simply cannot conclude that admission of photographs rendered the proceedings fundamentally unfair.  *See Smallwood v. Gibson,* 191 F.3d 1257, 1275 (10th Cir.1999) (holding that admission of photographs is generally a matter of state evidentiary rules, and federal courts on habeas review look only to whether the admission of the photographs rendered the proceedings fundamentally unfair).

they present an independent federal constitutional claim.  *See Lopez v. Riley*, 865 F.2d 30, 32-33

(2d Cir.1989).  Even assuming the existence of a federal right to indictment by a grand jury,

Pierce would nonetheless not be entitled to habeas relief on this claim, since any error in the

grand jury proceedings which resulted in the indictment was necessarily cured by his subsequent

conviction on the charges contained in that accusatory instrument. As the Supreme Court has

noted, a guilty verdict following a criminal trial necessarily renders any error in underlying

grand jury proceedings harmless by establishing "not only that there was probable cause to

believe that the defendant[ ] w[as] guilty as charged, but also that [he or she is] in fact guilty as

charged beyond a reasonable doubt."  *See United States v. Mechanik*, 475 U.S. 66, 70 (1986); *see

also Lopez*, 865 F.2d at 32 (citing *Mechanik*).  Accordingly, I recommend that this claim be

denied.

Due Process: Galvan's Presentence Report (PSR)

In Pierce's fourteenth issue, he argues that the trial judge's consideration of Galvan's

PSR resulted in a denial of due process.  I see no merit to this claim.  On habeas review of a jury

or judge's improper exposure to extraneous evidence, we review whether the extraneous

evidence "had [a] substantial and injurious effect or influence on the [judge's] decision." *Vigil v.

Zavaras*, 298 F.3d 935, 942 (10th Cir. 2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637

(1993)); *Henderson v. Jones*, 214 Fed.Appx. 795, 797 (10th Cir. January 26, 2007).  Here, the

trial judge testified at the evidentiary hearings that reviewing the PSR had very little effect on his

evaluation of Galvan's testimony or the verdict, and, if anything, made Galvan "appear less

credible." *2-21-00 Transcript* at 6, 18.  As such, the trial judge's review of the PSR did not have

a substantial and injurious effect on the judge's decision.

I also find no merit in Pierce's tenth issue, in which he claims that the trial judge

21

improperly sentenced Galvan prior to his trial.  This claim was argued in Pierce's state habeas

petition, but not in his petition for writ of certiorari and is therefore procedurally defaulted.  *See*

*Thomas*, 218 F.3d at 1221; *fn. 9, supra*.  Yet even when considering this issue on the merits, it

fails.  When, as in this case, no particular constitutional guarantees are implicated, such

objections merely raise questions of state law and, therefore, are cognizable in habeas

proceedings only if the alleged error was "so grossly prejudicial [that it] fatally infected the trial

and denied the fundamental fairness that is the essence of due process."  *See Revilla v. Gibson*,

283 F.3d 1203, 1212 (10th Cir. 2002).  With this standard in mind, I conclude that the trial

judge's sentencing of Galvan prior to Pierce provides no basis for habeas relief under section

2254(d)(1).  As the trial judge put it, because he had previously sentenced Galvan, he "knew in

advance that he was a con man." *9-2-99 Transcript* at 37.

## Due Process: Seven Year Delay

In his nineteenth issue, Pierce argues that the state court's seven year delay in ruling on

his habeas petition constitutes a violation of his due process rights.  At the outset, I note that this

claim is exhausted but procedurally defaulted for federal habeas review purposes.  *See Thomas*,

218 F.3d at 1221; *fn. 9, supra*.  Notwithstanding this deficiency, Pierce's due process claim

should be denied because it is without merit.  While a delay in post-conviction proceedings may

excuse exhaustion requirements,[19] a "delay in a collateral proceeding can[not] be the basis of a

petition for a writ of habeas corpus."  *Mason v. Myers*, 208 F.3d 414, 417 (3rd Cir. 2000); *see*

*also Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir.1996) ("[d]elay in processing [a state]

collateral claim does not make the continued imprisonment of the defendant unlawful, and

---

[19]   *See, e.g., Jones v. Crouse*, 360 F.2d 157, 158 (10th Cir. 1966).

hence, does not warrant federal habeas corpus relief."); *U.S. v. Dago*, 441 F.3d 1238, 1249 (10th Cir. 2006) (holding that a seven year delay in denying habeas petition was not a denial of due process sufficient to justify granting habeas relief).

Cumulative Error

In his fifteenth issue, Pierce argues that the cumulative effect of the other errors denied him a fair trial.  Given my rejection of the other issues, this issue is also unavailing.  *See Jones v. Stotts*, 59 F.3d 143, 147 (10th Cir. 1995) (noting that cumulative error analysis only applies to the effects of errors, rather than non-errors).

Wherefore,

IT IS HEREBY RECOMMENDED THAT:

1)       the petition for writ of habeas corpus under 28 U.S.C. § 2254 be denied; and

2)       this cause be dismissed with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

UNITED STATES MAGISTRATE JUDGE